Good morning, Your Honors. If it pleases the Court, I'm Abraham Wagner, representing Appellant DaVinci Aircraft Corporation. I'd like to begin remarks by noting a couple of key points, and I don't want to belabor the fact that you've read the briefs and understand most of these facts, but I'll just use it so I can clarify things. First, I believe there's no major difference between the parties as to the fundamental facts in this case. The plaintiff's property, the antennas for the jets and missiles, were lawfully acquired by plaintiff and had been sold by the Air Force as surplus property, and they were described by the government at the time as unclassified, surplus, and junk and of no value. And I'm going to address the security issue in a couple of moments. Do you believe you have a Tucker Act claim? Yes, we do, Your Honor, and I think at some length we discussed that in the brief, and if I may, I'll get back to that in a moment, if that's all right, Your Honor. Some months after the surplus sale of this hardware, the Air Force decided they needed the antennas as spare parts and engaged in contractual discussions with Plaintiff DaVinci to repurchase them and were unsuccessful in coming to an agreement on the price. In their brief, the government asserted, and I quote, DaVinci refused to sell the JASM antennae to the Air Force. We've noted this simply isn't true and contrary to the record. What is true is that DaVinci made several offers to the Air Force to sell the antennas, in fact lowering their price, and ultimately failed to conclude a contract at a mutual acceptable price. To characterize this interaction as a refusal to sell is really a distortion of the actual record. But that really doesn't have much to do with what we're, they came and they took them. Right, I mean, right, they, you know, failing to And you sued the government under the Federal Tort Claims Act and you brought a Bivens claim as well. That's correct, Your Honor. All right. Okay, and at failing to obtain the antennas in gross violation of their rights under the Fourth and Fifth Amendment, they engaged in an unlawful seizure when they had an ample opportunity to follow the law. They didn't. They never went to a federal court. Why did the district court err in dismissing your Federal Tort Claims Act cases? I believe they made an error and I believe that they misunderstood what the case law had been in this jurisdiction, in the Ninth Circuit, under Tucker and under the established cases. So the district court relied on the detention of goods exception. They relied on the detention of goods exception. And the point we Why was that wrong? It's wrong because all of the cases in this jurisdiction and before the federal courts, detention of goods all apply except for one case to the temporary detention of goods. And virtually every one of those cases is a customs case. They're goods that were detained by the federal government because they were owed money, normally customs duties. And that was a temporary concept. And after the customs duties was paid, the goods were returned to the rightful owner. The only other exception is the case of a prisoner being transferred from one place to another and they lost his goods, which really has no exception. This was not a The Supreme Court has put a very expansive gloss on that statute. It's said that 2680 encompasses Yes, Your Honor, but in no case before the Supreme Court or the other circuits has there been a detention case which was not a temporary holding because there was an issue between the government and the owner of the goods. Well, that simply is a way of saying this is a case of first impression. It's a case of first impression in the fact that there was no detention, in the fact that there was no intent on the part of the government to ever return these goods. They stole them. They took them to another vendor. They took them to Lockheed to be attached to a missile. They were not detained. And every one of the cases, the Supreme Court, as well as this circuit, has held that there is a temporal component in there. And as you say, if in fact this court were to hold that that detention exception applies to something that's not temporary, where there's absolutely no intent on the part of the government to ever return them, they couldn't have returned these goods. They took them and for beyond the record in this case, 100 of those missiles went to Syria and blew up. They couldn't give them back. So I believe that in this, with respect to that issue, that would be a case of. So for you, the distinction is that this was, they could only rely on the detention of goods exception if it was just for a temporary. That's correct. In all of the case law, every. They planned to give it back? They never planned to give anything. So temporary detention must mean, well, the government just took them until they resolved whatever dispute they had. Yes, Your Honor. In every one of the cases, the dispute has been over money owed to the federal government. Customs duties, except for the prisoner who had his luggage misplaced. In this case. So the government could keep the goods until they resolved their dispute over the value of the goods? No. Every one of those cases is a customs case. It wasn't over the value of the goods. It was customs duties owed to the U.S. government by the importer of the goods. So the government is only allowed, now you're saying, that the government is only allowed to invoke this exception if it's a temporary detention over a dispute relating to some sort of duty? Every one of, what I'm saying, Your Honor. Tax. Yes. Every one of those. Customs tax. That's the substantive basis for every one of the cases brought before this court. We'll grant you that. Okay. We'll grant you the fact that most of the prior cases involve customs duties. Correct, Your Honor. That, however, begs the question before us, which is whether the statute covers these circumstances. That would be a case of first impression. Will we see them from time to time? That is a good question. What we're arguing here is that the detention exception has never been applied to a case where the government. All right. So you might be right on that. But that doesn't resolve the issue we're up here grappling with. Suppose the government sees them and never intended to give them back. Why, what takes that out of the ambit of a detention? Well, we don't have in the record the legislative history and what went into the crafting of the detention exception. What in the text of the statute would mean that didn't apply? I don't see anything in the precise text of the statute as drafted that might prohibit this. It has never been applied that way before. And the intent of the government here was never to return the goods or even pay for them. I mean, the detention exception as I have read it, and as you say, this may be a case of first impression with respect to the detention exception, because they all involve the concept that the government was holding goods in abeyance pending some fiscal matter before the government. I'm a customs officer and I seize, you know, tiger bones or elephant tusks, and I don't intend to return them. Does the statute apply? Probably so, because you may have violated some statute. The point of the case here is that the plaintiff owed the government nothing. He was the lawful owner of this. He owed no customs duties. He owed no taxes. He owed nothing. He was the lawful owner, had his property stolen under the cloak of the Fourth Amendment and a fraudulent application of the Espionage Act. Why don't you win in the court of claims? Because the way the Tucker Act applies, and under Millbrook, essentially we are barred from winning in the court of claims because we've brought a constitutional issue. Well, you could have a Tucker Act claim in the court of claims. It's just your monetary recovery is very minimal. Right. That's what you don't want. Well, clearly that's what we don't want. But the, you know, under the federal court of claims lacks jurisdiction over the case because 1491 expressly precludes court of claims actions for cases sounding in tort. And here we refer the court to the Crane case, a 2016 case, which was citing Keene versus the United States, a 93 course. And the federal tort claims jurisdiction over tort claims is exclusively in the U.S. district courts under 28 U.S.C. 1346b1. So if you take that interpretation of the act, the court of claims is barred from hearing this case. We've also made the claim in the briefs that there is concurrent jurisdiction in the federal district court and the court of claims. But if you take the interpretation under Crane, which is a 2016 case decided after the filing of this one, citing the Supreme Court case of Keene, the jurisdiction lies exclusively in the federal district court. So we've made that argument at some length in the brief. Let me ask you this. You also brought a Bivens claim against the federal government. And initially you had some individual officers, the folks who took the goods. That's correct. Yes, Your Honor. They've subsequently been dismissed, as I understand it. Three of the individuals have been dismissed. There are other individuals. And we've discussed. Never been named. They've never been named. They were not named, as in the Bivens case. You can't maintain a Bivens case against the United States. Right. And there are additional individuals. And we made the motion. We've discussed this with government counsel. It's been enormously cooperative in discussing the matter. But in Bivens, they were not named. And when we determined the names of the additional individuals involved, moved in court to add them, and that was not resolved. And I believe the government may address that issue. But as the case stands now, the Bivens claim is against the United States government. It's against the United States government and the unnamed individuals that were not permitted. Well, you can have all these unnamed individuals, but they're not named and they're not part of the lawsuit. Well, a motion to amend and add them was not granted. Good. Okay. So. Yes, Your Honor.  Yeah, three minutes, I think. All right. You're down to 3.22. Okay. So I'll save the three minutes. Okay. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. I'm Assistant United States Attorney David Pincus, and I represent the United States of America. Da Vinci's claims under the Federal Tort Claims Act arose from the detention of ten GPS antenna for air-to-surface missiles by law enforcement agents of the United States Air Force. As such, the district court lacked jurisdiction over such claims under 28 U.S. Code 2680C. Where are the antennas now? I don't know, Your Honor. Are they still in detention? Yes, they are. But you don't know where they are? I don't. Does somebody have them locked up someplace? I hope so. I mean, it's been alleged that they were given over to Lockheed and have been attached to other missiles. I heard that, but there's no evidence in the record of any kind. But we have no evidence that they're currently in detention either, because you don't know where they are. Well, they have not been returned to Da Vinci, so. But I think that may be an important distinction. I mean, detention does suggest they're being held. And if, in fact, the allegation is true, that they're given over to a third party and used somehow for spare parts, how can they be said to be in detention? Well, Your Honor, I see your point, but as far as I know, they're still locked up somewhere. Are you speculating on that? Am I speculating? Yes. I think I would have heard if they weren't. I don't know. I don't know, but I think that Dr. Wagner is speculating. But this is a summary judgment, right? It is not, Your Honor. It's a 12B1 motion. So it's a motion to dismiss. Yes. And his arguments at counsel are not considered evidence and they're not entitled to a presumption of truth, as they might be in a pleading motion, which this is not either. Well, what's the dismissal based on if nobody really knows where they're held? Lack of subject matter jurisdiction. I would be glad to. The premise of which is that they're in detention. If the court would like, I would like to submit a supplemental brief as to where this equipment is right now. I don't know this, but I can try to see it. Does it make a difference for purposes of the statute? I mean, the goods were taken and detained, at least for some time. Yes, they were. Yes. But let's assume for a moment that the allegations, which I understand aren't supported by evidence, are true, that, in fact, they were taken, given over to a third party, used for spare parts. Would that qualify under the detention exception? I think the answer is probably no. And if so, doesn't it become important to find out what happened to the items that were taken? Well, if they were used in some sort of security. Well, no, see, I wouldn't suggest going down that road. I mean, the Fifth Amendment tells us you're not supposed to, the government's not supposed to take private property without compensation. And that's what the Court of Federal Claims is for, to decide that issue, what the just compensation is. And there's always been a remedy there. Dr. Wagner made a statement that there's no legislative history for this exception to the FTCA. There is. In the Amar case, this Court noted what the purpose of the detention was. The purpose was to note that Congress decided there were certain functions of the government that are so important that they should not be disrupted by excessive claims, especially where there is another remedy, as here in the Court of Federal Claims. All the cases that have been dealing with anything similar to this, the Dubin case and the AST Servo case, they were all in the Court of Federal Claims. Well, let me check off a box then. Your counterpart counsel has suggested there may be a problem with regard to the jurisdiction of the Court of Claims. Does the government take the position that, in fact, the Court of Claims has jurisdiction over this claim? Over a tort claim? No, it doesn't. No, not over a tort claim, over this party's claim, the taking claim. Absolutely. They even asked that the case be transferred to the Court of Claims. Who said they? Da Vinci, these attorneys, Dr. Wagner and his co-counsel, they requested that. And the Court said that they couldn't do that at this point because at that time there were Bivens claims. But Da Vinci dismissed them voluntarily. And I also heard Dr. Wagner say that there was a motion to amend. That is not accurate. There was no motion to amend at any point to add Bivens claims than to name the Bivens defendants. If you look at the Pacer record, there is nothing like that. Help me understand something. I'm somewhat confused about the background of this incident. So at one point in time, these antennae were demilitarized. I seem to think that meant no longer for military use is what I took away from that. And then they were authorized by the Air Force for public sale in 2013. And then they were purchased by some party called Advertar and so forth, and then resold. So how can that happen to goods that are classified, that are secret? I don't get that. I don't think they were classified originally. But that happened in the Dubin case. That's exactly the scenario. Did the antennae change? Did they morph into something else? How could they have been not secret in 2013, but secret a couple of years later? What happened to the antennae? How did that happen? The mistake was made, just as it was in the Dubin case and just as it was in the AST Servo case. These things do happen, unfortunately. And there has to be a way to claw them back when it's discovered that they shouldn't have been sold in the first place. If da Vinci is correct, then the government has no ability to do that. And I think that would be a very startling proposition, and it would not be feasible. I may have missed it, but I didn't see a confession of error by the government on that point in its briefs. Did I miss it? I didn't. You wrote the briefs. I did write that. You told me whether it's in there or not. I made the same comment that there would be no way to correct an error.  Yes, Your Honor. So it says, any claim arising in respect of the assessment or collection of any tax or customs duty or, I should say, or customs duty, comma, or the detention of any goods, comma, merchandise or any other property by any officer. So he says that we should read into that. It only applies if there's a temporary detention, as Judge, as we've been discussing, as Judge Clifton has. Well, Your Honor, Congress subsequently enacted a forfeiture exception for failed forfeiture. Yes, an exception to the exception, right? I would argue that there would never be a reason for an exception like that if Dr. Wagner's position was correct, because every forfeiture necessarily indicates that there's an intent not to return the property. In fact, even to this day, if there is a failed, even if there is a failed forfeiture, but there's some other portion of that exception that doesn't apply, then the detention clearly applies. Did I, was I clear on that? Maybe I should. Okay, what I meant to say is even if there is a failed forfeiture, there still might be circumstances where the exception would apply. If, for example, the claimant had been convicted of a crime, even if the forfeiture didn't work for some reason or there never was a forfeiture, the fact that he'd been convicted of a crime means that the exception would apply. I hear that, but it seems to me it can be flipped around just as easily. Why would you need the exception to the exception if the government simply taking it and holding it forever and using it for its purposes still qualified for the detention exception? I think this exception is designed to push it back out if, in fact, that's what the government has done. Well, Your Honor, in the Amar case, which is a 1978 case, I believe, this court held that the purpose of the statute was to prevent claims for conversion, just like what we have here. And as I said earlier, there are certain types of government actions that shouldn't be disrupted by these kind of claims. Here we have property that's been classified retroactively as secret, harmful to the United States if it's given to our adversaries. And da Vinci is asking for $1.25 million when it only paid $3,000. That's the type of excessive claim. That's exactly what the Amar court was talking about. And here there is a remedy in the court of claims. There wasn't at one point a claim for breach of implied contract, and it was dismissed on another exception to the FTCA. Now that the Bivens claims have been dismissed, there's no reason why it can't go to the court of federal claims. And if Dr. Wagner wants to try to convince them that they should have a higher recovery than what they're out of pocket, then he can do that. Also in the Gashow case. Okay. We're at a motion to dismiss stage. The allegation is that the government wanted this, may have had a classification argument, but ultimately used the antennas as spare parts. There's absolutely no evidence of that. Well, but we're at a motion to dismiss. And it gets complicated because it's a jurisdictional motion to dismiss, but the court has to base its conclusion on some factual understanding that, in fact, these were taken by the government to keep them classified and they're still being held, not that these are taken by the government for spare parts. We have in the record the letter classifying this military equipment. Those things aren't mutually exclusive. I mean, it's not hard to put together a scenario, and I'm not conspiratorial-minded by nature, but you can put together a scenario saying, well, we can't pay a $1.2 million or $600,000. This was all a screw-up. We never should have let these things go. So we're just going to take them back, and that way we'll pay $3,000, maybe $6,000, but we're not going to pay hundreds of thousands of dollars. I understand the logic of that, and as a taxpayer I might appreciate it, but why isn't that a plausible theory over which the court would have jurisdiction? Because in a 12b-1 motion, the court is not supposed to assume that any argument made by counsel is correct. There has to be some evidence. In that sense, it is similar to a summary judgment motion. We have evidence on our side. We have evidence that this was done for national security reasons. There is no evidence on the other side. But even in a summary judgment motion, something beats nothing. Do you have another? Because initially, for reasons which are not entirely clear for the record, but you've helped me with, in 2013, these were just surplus spare parts, according to the government. That was the same thing that happened in the Dubin case. That was the same thing that happened in the Servo case. In the Dubin case said that the fact that the equipment had been classified, together with the nature of the equipment, left no room for doubt that it was for national security purposes. Anything else? Sure. Well, there really is no Bivens claim. There is no Bivens claim. There was never a motion to amend the complaint to substitute parties. And as far as not knowing who the parties are, every one of those three individuals that was mentioned is listed in the original complaint. So there's no reason why. I did want to mention there's no reason why they couldn't have amended the complaint earlier. There was no attempt to it. In fact, Da Vinci filed a premature appeal, and the reason they dismissed the other Bivens defendants was so that they could maintain this appeal in the face of this court's OSC. It would make no sense to have other Bivens defendants, to dismiss the named Bivens defendants and then somehow keep the original undisclosed names. That just makes no sense. I did want to mention the Gasho case, which was a seizure of an aircraft in the Ninth Circuit, and the court held that it was detained and subject to 2680C. It's not true that all the cases only apply to matters dealing with taxes or customs. Also, in the Second Circuit, the Adelke case held that a seizure for purposes of forfeiture did qualify as a detention of goods. A lot of the cases actually that were cited are in the Second Circuit, and they all hold this way. Thank you very much, Your Honors. Okay, Johnson. Thank you, Your Honors. Just to run through a couple of things. If you'll excuse my curiosity, why do you think you're entitled to $1.5 million for equipment that you bought for $3,000, $1.5 million in taxpayer dollars? Well, I believe that there were negotiations between the plaintiff and the government as to what an appropriate price would be. You went from $1.5 million to $750,000. Why do you think you're entitled to money on that order for goods you paid for $3,000? The plaintiff would argue that the business they are in is sort of like mining. They buy lots and lots of surplus property, most of which has very little value, and from time to time the government needs the equipment back or someone needs the equipment and it's at a high price. I mean, the successor contract for the additional antennas was $44.5 million. I'm sorry, say that again. There was a successor procurement for additional antennas on the part of the United States government. It comes after the record here, but for your information, Your Honor, there was a procurement for additional antennas, which went for $44.5 million. A piece? No, for a lot of them. It's a large amount of money. We would like the opportunity to sort of make those arguments in the course of a trial, and hopefully that would be adjudicated. You raise a good question. So what do we do with the jurisdictional issue? I believe it is there in the record to suggest that the government doesn't still have these things locked up someplace. Well, there is nothing in the record, and I agree with the government's counsel. We have no absolute record. You know, my speculation, if you want to ask me the question, the 100 JASA missiles that the United States government had their hands on were used last year on an attack on chemical weapons facilities in Syria at the order of the president. Of the 100 that were launched, 99 actually got to their destination. What evidence is there that any of these antennas were attached to those missiles? There is nothing in the record, if you want speculation. So what do you propose we do? Well, you know, order Lockheed to give back the antennas. They don't exist. That's not happening. That's not likely to happen. That's not likely to happen. Lockheed is not a party. What do you expect us to do with the case that we have in front of us based on the record we have in front of us? I would like to have the case remanded to the federal district court. If you look at where we are in the proceedings. Based on what? Based on the fact, you know, it belongs in the federal district court either exclusively or optionally, and there has never been an opportunity for the case to go forward and do any discovery. Seek jurisdictional discovery in response to the Rule 12b-1 motion. We were never permitted to go. You asked for it. What? I mean, I've been in cases back when I was a lawyer. Sometimes you get discovery at the earliest stage. There was no discovery permitted in the case. I mean, is there an order denying a request for discovery? There was no signed order denying discovery at that point in time. Is there anything in the record that indicates that you sought discovery on these issues? Not that I can recall at this moment in time, Your Honor. Let me just address a couple of additional points that counsel made. A 12b-1 motion to dismiss must be based on the fact that a reading given to the arguments of the plaintiffs must be read in favor of the plaintiff absent any evidence to the contrary. He brought up the Dubin and A.T. Servo cases. In both of those cases, they involved hardware that were classified by the United States government at the time of their sale. Major difference here. And the argument we've made that this was manufactured as unclassified hardware, the paper trail that would be associated with the manufacture of classified hardware simply didn't exist, and we maintained in our briefs that the single letter brought forth in 2017 from a single official in the United States government who's yet to be deposed is a false and fraudulent farce to cover the behinds of some people that didn't want to go to court. I'm sorry. You're over your time. I'm over it. Thank you, Your Honor. I appreciate it. Thank you very much. Interesting case. Thank you. We appreciate your arguments. Safe travels. Matter submitted.
judges: Parker, Paez, Clifton